UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RAVIS M. WILLIAMS,

      Petitioner,

v.                                    CASE NO. 8:10-cv-2761-T-27TGW

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## ORDER

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. § 2254 (Doc. No. 1). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted. Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions (Doc. No. 5). Petitioner filed a reply to the response (Doc. No. 6).

The matter is now before the Court for consideration on the merits of Petitioner's claims. An evidentiary hearing is not required for the disposition of this matter. Rules Governing Section 2254 Cases 8(a) (2013).

## Procedural and Factual History

Petitioner was charged by superceding information with burglary of an occupied dwelling with an assault or battery (count one), grand theft (count two), home invasion robbery (count three), and battery of a victim over sixty-five years of age (count four). Prior to trial, defense counsel filed a motion to suppress the photographic lineup identification of Petitioner made by the victim, Therman Flowers ("Flowers"). The trial court denied the motion after an evidentiary hearing.

At trial, Flowers, who was eighty-six years of age, testified that around 1:30 A.M. on July 8, 2004, he answered a knock on his door. (Ex. 1-D at 141-42.) Flowers said that when he opened the door, Petitioner told him he was there to get the money that Mike owed him and he then hit Flowers in the right eye, knocking him down. *Id.* at 145-46. According to Flowers, Mike had previously lived with him and he had met Petitioner through Mike. *Id.* at 147. Flowers testified that Petitioner forced his way into the apartment, hit him several more times while he was on the floor, and took his keys and wallet. *Id.* at 147-48. After Petitioner left the apartment, Flowers called 911 and realized that Petitioner had taken his vehicle. *Id.* at 152. Flowers testified that he could not identify Petitioner after he was apprehended directly after the incident because of the lighting and because his vision was "messed up" from the attack. *Id.* at 155-56, 163-64. Nevertheless, Flowers identified Petitioner as the perpetrator a few hours later in a photographic lineup and also at trial. *Id.* at 157-59.

Officer Thomas McCasland testified that he responded to Flowers' apartment shortly after the incident occurred. *Id.* at 179. Officer McCasland said that Flowers described the perpetrator as a black male in his thirties, approximately 5'9, 130 pounds wearing a white collared shirt and blue jeans. *Id.* at 182. Officer McCasland stated that Flowers told him that the perpetrator was an acquaintance of his former roommate and he had seen the perpetrator around the apartment complex. *Id.* Within one hour of the offense, Officer McCasland took Flowers to a gas station where Petitioner had been apprehended driving Flowers' vehicle. *Id.* at 155, 183-84. Officer McCasland said that Petitioner matched Flowers' description of the perpetrator. *Id.* at 185-86. Officer McCasland drove Flowers within ten feet of Petitioner, who was standing alone outside a police cruiser, and shined his spotlight on Petitioner. *Id.* at 184-87. According to McCasland, Flowers told

him he was having a difficult time seeing and was not sure if Petitioner was the perpetrator but he stated that Petitioner looked similar to the perpetrator. *Id.* at 187-88. Officer McCasland searched Petitioner and found Flowers' credit card in the pocket of Petitioner's shorts. *Id.* at 188.

The jury found Petitioner guilty as charged. The trial court sentenced Petitioner to life in prison as a prison releasee reoffender for count one and to concurrent five-year terms of imprisonment for counts two and four. The trial court set aside the conviction for home invasion robbery, finding it was subsumed by the burglary conviction. (Ex. 1-E at 388.)

Petitioner appealed his convictions. The Second District Court of Appeal of Florida affirmed *per curiam* on February 15, 2006. (Ex. 2.)

Petitioner filed a *pro se* motion for post-conviction relief in the trial court on March 28, 2006, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("3.850 motion") (Ex. 3-A at 71). The state court summarily denied some of Petitioner's claims and ordered an evidentiary hearing on the remaining claims (Ex. 3-F at 897-903). The state court denied the remaining claims after the evidentiary hearing (Ex. 3-D at 489-93). Petitioner appealed, and the Second District Court of Appeal of Florida affirmed *per curiam* on August 20, 2010 (Ex. 4).

### The AEDPA Standard of Review

Petitioner timely filed the instant federal petition, pursuant to 28 U.S.C. § 2244(d), on December 8, 2010, raising six grounds for relief. His petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") effective April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)     resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Sec'y, Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the

presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28

U.S.C. § 2254(e)(1).

### Standard of Review for Ineffective Assistance of Counsel Claims

The Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984),

established a two-part test for determining whether a convicted person is entitled to relief on the

ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was

deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient

performance prejudiced the defense.[1]  *Id.* at 687-88.  A court must adhere to a strong presumption

that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id.* at 689-

90.  "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of

counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's

conduct."  *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of

counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even
> what most good lawyers would have done. We ask only whether some reasonable
> lawyer at the trial could have acted, in the circumstances, as defense counsel acted
> at trial. Courts also should at the start presume effectiveness and should always avoid
> second guessing with the benefit of hindsight. *Strickland* encourages reviewing
> courts to allow lawyers broad discretion to represent their clients by pursuing their
> own strategy. We are not interested in grading lawyers' performances; we are
> interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).  Under those rules

---

[1]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

**Discussion**

**Claim One**

Petitioner asserts that the trial court erred by denying his motion to suppress the photographic lineup identification. In support of this claim, Petitioner argues that the photographic identification procedure was impermissibly suggestive because of the attempted show-up identification that occurred before the photographic identification. Petitioner also notes that Flowers picked two individuals from the photographic lineup.

Petitioner raised this claim on direct appeal. The Second District Court of Appeal of Florida affirmed *per curiam*.

"To violate due process, an identification procedure used by the police must be unnecessarily suggestive and create a substantial risk of misidentification." *Johnson v. Dugger*, 817 F.2d 726, 729 (11th Cir. 1987) (citing *Neil v. Biggers*, 409 U.S. 188 (1972)). Suggestive "show-up" identifications are admissible if, based on the totality of the circumstances, the identification was reliable. *Biggers*, 409 U.S. at 199. "Factors considered in determining reliability include 'the opportunity to view the witness at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.'" *Johnson*, 817 F.2d at 729 (quoting *Biggers*, 409 U.S. at 199). "These factors are weighed against the corrupting effect of the suggestive identification, as there is no *per se* rule requiring exclusion of an identification merely because it was

6

obtained after unduly suggestive procedures." *Escobar v. McDonough*, No. 1:06-cv-207-MP-AK, 2008 WL 2635565, *7 (N.D. Fla. July 2, 2008) (citing *Manson v. Braithwaite*, 432 U.S. 98, 114-17 (1977)). "The state court's findings on each of the *Biggers* factors are entitled to a presumption of correctness, and [the petitioner must] show[] that those findings were clearly erroneous." *Hawkins v. Sec'y, Fla. Dep't of Corr.*, 219 F. App'x 904, 907 (11th Cir. 2007).

At the hearing on the motion to suppress, Flowers testified that he knew Petitioner through a former roommate and had seen him several times prior to the offenses. (Ex. 3-C at 434-35.) Flowers said the lights were on in the hall and in his apartment at the time of the incident and he immediately recognized Petitioner when he opened his door. *Id.* at 436. Flowers testified that Petitioner hit him at least ten times and was laying on top of him. *Id.* at 437-38. Flowers said he got a very good look at Petitioner. *Id. at 438.* According to Flowers, he could not identify Petitioner definitively at the show-up because of the lighting at the scene and the injury to his eye. *Id.* at 441-42. Flowers said, however, that Petitioner looked familiar at the show-up. *Id.* A few hours later, Flowers was shown a photographic lineup containing six photographs. *Id.* at 443. Flowers testified that he picked Petitioner out as the person who broke into his home, but someone else in the lineup was also familiar to him from the neighborhood. *Id.* at 443-45. Flowers indicated he had no doubt it was Petitioner who committed the offenses. *Id.* at 445.

Detective Carlos Navarro testified that he interviewed Flowers before showing him the photographic lineup. *Id.* at 458. Detective Navarro said that Flowers told him he was familiar with the perpetrator. *Id.* According to Detective Navarro, Flowers also told him that the person he observed at the show-up was wearing the same clothing as the perpetrator but Flowers indicated that the lights were too bright for him to see clearly and he was too far away from the perpetrator at the

7

show-up to identify him. *Id.* at 458-59. Detective Navarro testified that Flowers identified Petitioner as the perpetrator without hesitation when showed the photographic lineup although Flowers also pointed out another person as looking familiar from the neighborhood. *Id.* at 461. Detective Navarro denied ever implying or telling Flowers that the individual Flowers had identified as Skeeter[2] or the person at the show-up was in the photographic lineup. *Id.* at 462, 464-65.

Based on the totality of circumstances, the Court concludes that Flowers' photographic lineup and trial identifications of Petitioner were reliable. The evidence demonstrates that (1) Flowers knew Petitioner prior to the offenses, (2) Flowers had sufficient opportunity to view Petitioner at the time of the offenses, (3) Flowers' attention was focused on Petitioner when he was on top of Flowers, (4) Flowers' description to the police of Petitioner and his clothing were consistent with Petitioner's appearance at the time of his arrest, (5) Flowers was certain that Petitioner was the perpetrator when he viewed the photographic lineup, and (6) Flowers identified Petitioner within hours of the offenses. Furthermore, Petitioner was apprehended in Flowers' vehicle less than an hour after the offenses, and Petitioner had Flowers' credit card. Although Flowers had a chance to observe Petitioner at the show-up but could not identify him, this did not render the photographic lineup impermissibly suggestive or result in a substantial risk of misidentification given the totality of the circumstances. Thus, the lineup and in-court identifications were admissible.

Petitioner has failed to cite to any decision of the Supreme Court of the United States establishing that the state appellate court's denial of this claim was contrary to, or an unreasonable application of *Biggers*, nor has he shown that the decision was based on an unreasonable determination of the facts. Accordingly, claim one is denied pursuant to Section 2254(d).

---

[2] Skeeter was the name by which Flowers knew Petitioner.

**Claim Two**

Petitioner contends that the trial court erred by instructing the jury on stealth as part of the jury instruction for burglary. In support of this claim, Petitioner argues that the evidence did not show stealth was used to enter Flowers' home and thus the instruction was erroneous. Respondents note that they do not "strongly dispute" that the stealth portion of the burglary instruction was improper. (Doc. No. 5 at 9.) Nevertheless, Respondents argue that the error was harmless.

Petitioner raised this claim on direct appeal. The Second District Court of Appeal of Florida affirmed *per curiam.*

The Eleventh Circuit Court of Appeals had held that a federal court's role on habeas review of a state law jury instruction is:

> to determine whether any error or omission in the jury charge was so prejudicial as to amount to a violation of due process. In making that determination, we do not judge portions of the jury charge, or even the entire charge, standing alone. A defendant's right to due process is not violated unless an erroneous instruction, when viewed in light of the entire trial, was so misleading as to make the trial unfair.

*Agan v. Vaughn,* 119 F.3d 1538, 1545 (11th Cir. 1997) (citations omitted).

The trial court instructed the jury as follows:

> To prove the crime of burglary, the State must prove the following three elements beyond a reasonable doubt:
>
> One, that Ravis Williams entered a structure owned by or in possession of Thurman [sic] Flowers.
>
> Two, that Ravis Williams did not have permission or consent of Thurman [sic] Flowers or anyone authorized to act for him to enter the structure at the time.
>
> Three, that at the time of entering the structure, Ravis Williams had a fully-formed, conscious intent to commit an offense of theft in the structure.

(Ex. 1-E at 350-51.)  The trial court further instructed the jury that "[p]roof of the entering of a structure stealthily and without the consent of the owner or occupant may justify a finding that the entering was within [sic] the intent to commit a crime. . . ." (Ex. 1-E at 351.)

Assuming that the stealth portion of the burglary instruction was erroneous, Petitioner has not demonstrated that the instruction was so misleading as to render the trial unfair.  The evidence amply supported Petitioner's conviction for burglary with an assault or battery.  Flowers testified that he did not invite Petitioner into his apartment, but instead Petitioner hit him, knocked him down, and forced his way into the apartment.  Flowers further said that prior to entering the apartment, Petitioner indicated his intent to get money.  The stealth portion of the burglary instruction did not negate the evidence presented nor did it contradict any of the three elements of the burglary instruction.  In sum, any error in the burglary instruction resulted in harmless error.  *See, e.g., Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1307 (11th Cir. 2012) ("[C]onstitutional error is harmless unless there is 'actual prejudice,' meaning that the error had a 'substantial and injurious effect or influence' on the jury's verdict.").  Petitioner, therefore, has not established that the state court's denial of this claim is contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, claim two is denied pursuant to Section 2254(d).

**Claim Three**

Petitioner contends that counsel rendered ineffective assistance by failing to depose witnesses prior to the hearing on the motion to suppress and trial.  Specifically, Petitioner complains that counsel should have deposed Officer McCasland, Flowers, and Detective Navarro.  Petitioner asserts that had counsel deposed these witnesses, he could have determined that (1) Officer McCasland conducted an impermissible show-up identification, (2) Detective Navarro was not at the show-up

10

identification, and (3) Flowers' account of when he viewed Petitioner was questionable and his pretrial statements concerning when he recognized Petitioner differed.

Petitioner raised this claim in his Rule 3.850 motion. The state court denied relief after an evidentiary hearing. (Ex. 3-D at 490.) The state court noted that counsel testified at the hearing that he decided not to depose Officer McCasland because he had Officer McCasland's twenty-nine page report and he did not want to aid the State in its trial preparation. *Id.* The state court further noted counsel's testimony that he chose not to depose other law enforcement officers because he did not want to give them a reason to review each others reports and shore up their stories. *Id.* Counsel also indicated he did not depose Flowers because he was able to thoroughly question him at the suppression hearing and to successfully impeach Flowers at trial with his statements to police. *Id.* The state court concluded that counsel made a strategic decision not to depose these witnesses, and Petitioner failed to demonstrate that counsel was ineffective. *Id.*

The state court made a factual determination that counsel's testimony was credible. "Credibility determinations are factual findings and therefore 'are presumed to be correct absent clear and convincing evidence to the contrary.'" *Guerra v. Sec'y, Dep't of Corr.*, 271 F. App'x 870, 871 (11th Cir. 2008) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). Petitioner has not demonstrated by clear and convincing evidence that the state court's factual determination is incorrect.

Counsel testified that he made a strategic decision not to depose Officer McCasland, Detective Navarro, and Flowers. (Ex. 3-D at 559-64.) Counsel indicated that he did not take the officers' depositions because he did not want to give them a reason to "get on the same page" and he had numerous, lengthy police reports. *Id.* Counsel further testified that he was able to thoroughly

11

question Flowers prior to trial and raise inconsistencies in his testimony regarding his identification of Petitioner. *Id.* "[S]trategic choices made after thorough investigation are virtually unchallengeable." *Small v. Fla. Dep't of Corr.,* 470 F. App'x 808, 812 (11th Cir. 2012) (citing *Blankenship v. Hall,* 542 F.3d 1253, 1273 (11th Cir. 2008)). Based on counsel's testimony, the Court concludes that he made a reasonable strategic decision not to depose these witnesses prior to trial.

Moreover, Petitioner has not demonstrated that prejudice resulted from counsel's failure to depose these witnesses. Flowers testified at the suppression hearing regarding the show-up identification, including testimony regarding the distance he was from Petitioner and that Petitioner was standing alone and lights were on him. (Ex. 3-C at 440-43.) Counsel was able to challenge Flowers' subsequent photo identification based on the arguably impermissibly suggestive show-up procedure. *Id.* at 448-56, 463-73. Likewise, counsel thoroughly cross-examined Flowers at trial regarding his statements to police and was able to show various inconsistencies in Flowers' pretrial statements and his trial testimony regarding his identification of Petitioner. (Ex. 1-D at 159-76, 191-202, 325-30.) Petitioner has not established a reasonable probability exists that taking the deposition of any of these witnesses would have resulted in the suppression of Flowers' photo identification or in Petitioner's acquittal. Accordingly, the state court's denial of this claim is neither contrary to, nor an unreasonable application of, *Strickland,* and claim three is denied pursuant to Section 2254(d).

**Claim Four**

Petitioner asserts that counsel rendered ineffective assistance by failing to object to the introduction of his criminal history. In support of this claim, Petitioner relies on Detective Navarro's testimony that Petitioner was arrested for driving while license suspended and the 911-recording in

which Flowers referred to the perpetrator as being a drug dealer and user.

Petitioner raised this claim in his Rule 3.850 motion. The state court denied the claim after an evidentiary hearing. (Ex. 3-D at 491-92.) The state court noted that counsel testified that he and Petitioner discussed purposely allowing the jury to hear that Petitioner was only arrested for driving with license suspended on the night of the incident because it was a relatively minor charge. *Id.* at 491. The state court found that counsel's testimony was credible and the decision was strategic. *Id.* With respect to the drug dealer references, the state court noted that two references were made during trial, one on the 911-recording and one by Flowers stating that his former roommate was on some "stuff" and Petitioner was delivering him "stuff." *Id.* The state court found credible counsel's testimony that he made a strategic decision not to object to the statements because the defense was premised on misidentification and thus it was irrelevant that Flowers thought the perpetrator was a drug dealer. *Id.*

The state court made a factual determination that counsel's testimony was credible. "Credibility determinations are factual findings and therefore 'are presumed to be correct absent clear and convincing evidence to the contrary.'" *Guerra.*, 271 F. App'x at 871 (quoting *Miller-El*, 537 U.S. at 340). Petitioner has not demonstrated by clear and convincing evidence that the state court's factual determination is incorrect.

Counsel testified that he and Petitioner discussed the issue of his arrest for driving while license suspended, and they agreed they wanted the jury to know that Petitioner was arrested on the date of the incident solely for that offense and not for the offenses at issue at trial. (Ex. 3-D at 565.) Similarly, counsel indicated that he did not object to the two references to the perpetrator being a drug dealer because the defense's theory was that Flowers had misidentified Petitioner. *Id.* at 570-

71. From counsel's testimony, the Court concludes that he made a reasonable strategic decision not to object to this evidence and thus did not render deficient performance.

Even assuming counsel's decision not to object was unreasonable, Petitioner has not demonstrated that prejudice resulted from counsel's failure to do so. The evidence against Petitioner was substantial. Flowers identified Petitioner as the perpetrator, Petitioner was apprehended less than an hour after the incident in Flowers' car, and Petitioner had Flowers' credit card in his possession. Furthermore, the witnesses identified by Petitioner to explain his activities on the night of the incident and his possession of Flowers' property contradicted the statements given to law enforcement by Petitioner. Consequently, a reasonable probability does not exist that Petitioner would have been acquitted had counsel objected to the statements related to his prior criminal history. Accordingly, claim four is denied pursuant to Section 2254(d).

**Claim Five**

Petitioner maintains that counsel rendered ineffective assistance by failing to move for a mistrial after Detective Navarro commented on his post arrest silence. In support of this claim, Petitioner references Detective Navarro's testimony that he had to stop the interview when Petitioner said the interview was concluded. Specifically, Detective Navarro testified that Petitioner stopped the interview when he was confronted with the results of the police investigation, namely that one of the individuals identified by Petitioner as the person who had given him a ride on the night of the incident had refuted Petitioner's statement. (Ex. 1-D at 285-86.)

Petitioner raised this claim in his Rule 3.850 motion. The state court denied the claim after an evidentiary hearing. (Ex. 3-D at 492-93.) The state court noted that counsel testified he thought Detective Navarro's testimony regarding the interviews of Petitioner was beneficial to the defense

14

because it showed that Petitioner was cooperative on numerous occasions with the police. *Id.* at 492. Counsel further indicated that he did not believe the comment was the type that would result in a mistrial, and therefore, he did not want to highlight the comment by moving for a mistrial. *Id.* Additionally, the state court noted that counsel testified that he discussed the matter with Petitioner, and Petitioner agreed they should not move for a mistrial. *Id.* The state court concluded that counsel made a strategic decision not to move for a mistrial after consultation with Petitioner, and thus, Petitioner had not established ineffective assistance of counsel. *Id.* at 493.

"'It is well established that a prosecutor cannot comment on a defendant's post-*Miranda* silence to impeach exculpatory testimony on the ground that the defendant did not explain his conduct at the time of his arrest.'" *United States v. Tush*, 165 F. App'x 742, 743-44 (11th Cir. 2006) (quoting *United States v. Dodd*, 111 F.3d 867, 869 (11th Cir. 1997)); *see also Doyle v. Ohio*, 426 U.S. 610 (1976). "'A comment is deemed to be a reference to a defendant's silence if it was the prosecutor's manifest intention to refer to the defendant's silence or if it was of such a character that the jury would naturally and necessarily understand it to be a comment on a defendant's silence.'" *Id.* at 744 (quoting *Dodd*, 111 F. 3d at 869). "[R]eferences to a defendant's silence that are 'isolated' or 'unintentional' or 'promptly addressed by a curative instruction from the trial court' and not further 'highlight[ed]' by 'questioning other witnesses or during closing argument' are reviewed for harmless error." *Fugate v. Head*, 261 F.3d 1206, 1223 (11th Cir. 2001) (quoting *Hill v. Turpin*, 135 F.3d 1411, 1417 (11th Cir.1998)).

"Determining whether a government's statement about a defendant's silence is harmless error 'requires an examination of the facts, the trial context of the error, and the prejudice created thereby as juxtaposed against the strength of the evidence of [the] defendant's guilt.'" *Tush*, 165 F. App'x

at 744 (quoting *United States v. Meneses-Davila*, 580 F.2d 888, 890 (5th Cir. 1978)). The Eleventh Circuit has held that even if a prosecutor's comments were an objectionable reference to the defendant's silence, relief is not warranted pursuant to *Strickland* if the weight of the evidence precludes a finding of prejudice. *See, e.g., Smith v. Crosby*, 159 F. App'x 76, 80 (11th Cir. 2005) (concluding that Petitioner failed to demonstrate prejudice in relation to his claim that counsel was ineffective for failing to object to prosecutor's statements regarding Petitioner's silence given the weight of the evidence); *see also Fugate*, 261 F.3d at 1224 (concluding that Petitioner failed to establish prejudice pursuant to *Strickland* on claim that counsel failed to object to prosecutorial comments that implicated defendant's right to remain silence).

The state court found counsel's testimony at the evidentiary hearing that he discussed the issue with Petitioner and they decided not to move for a mistrial to be credible. Consequently, this Court concludes in light of the evidence that counsel made a reasonable strategic decision not to move for a mistrial, and thus, he did not render deficient performance.

Moreover, Detective Navarro's limited statement was isolated and was not further highlighted by questioning other witnesses or during closing argument. Finally, as discussed *supra*, the evidence against Petitioner was substantial. Petitioner, therefore, has not demonstrated that prejudice resulted from counsel's failure to move for a mistrial. Accordingly, claim five is denied pursuant to Section 2254(d).

**Claim Six**

Petitioner asserts that the cumulative effect of counsel's ineffective assistance deprived him of a fair trial. Petitioner relies on all of the alleged instances of ineffective assistance of counsel to support claim six.

16

"The Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim." *Forrest v. Fla. Dep't of Corr.*, 342 F. App'x 560, 564 (11th Cir. 2009). The Supreme Court has held, however, in relation to an ineffective assistance of counsel claim, that "'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt.'" *Id.* at 564-65 (quoting *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984)).

Upon consideration of the record, Petitioner has failed to demonstrate that counsel rendered ineffective assistance with respect to any of the claims raised. The Court has considered the merits of each of Petitioner's claims of ineffective assistance of counsel and determined that they are not meritorious. Therefore, even assuming that the claims may be considered in the aggregate, Petitioner has not established that he received ineffective assistance of counsel. *See Cole v. Crosby*, No. 5:05cv222-Oc-10GRJ, 2006 WL 1169536, at *57 (M.D. Fla. May 3, 2006) (concluding that when the petitioner failed to demonstrate deficient performance or prejudice with respect to any claim, he could not show he suffered any harm from the cumulative effect of counsel's performance). Thus, claim six is denied.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

ACCORDINGLY, it is **ORDERED** that:

1.      The Petition for Writ of Habeas Corpus is **DENIED** (Doc. No. 1).

2.      The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

17

**CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS**

    **IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Petitioner cannot make the requisite showing in these circumstances.

    Finally, because Petitioner is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

    **DONE AND ORDERED** in Tampa, Florida, on this 7ᵀᴳ day of January, 2014.

JAMES D. WHITTEMORE
United States District Judge

Copy to: Ravis M. Williams
          Counsel of Record